IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT JACKSON, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | NO.  13-4872 |
| PHILADELPHIA HOUSING AUTHORITY, : | |
| GEORGE JOHNSON, GEORGE SAMBUCA, : | |
| CITY OF PHILADELPHIA, and : | |
| JOHN DOES 1–10, : | |
| : | |
| Defendants. : | |

MEMORANDUM

BUCKWALTER, S.J.                                                                                                March 20, 2014

  Currently pending before the Court are (1) the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Philadelphia Housing Authority ("PHA") and George Johnson and (2) the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant George Sambuca.  For the following reasons, the Motions are granted in part without prejudice to Plaintiff's leave to file a Second Amended Complaint.

I.  FACTUAL AND PROCEDURAL BACKGROUND

  According to the facts set forth in the Amended Complaint, Plaintiff Robert Jackson, a Caucasian male, began Defendant PHA's Pre-Apprenticeship Program in January 2012.  (Am. Compl. ¶ 9.)  This Program provides an introduction to carpentry, plumbing, painting, and electrical work.  (Id.)  Plaintiff was among the oldest and one of the only Caucasian students in the Program.  (Id. ¶ 10.)  Based on weekly test scores, Plaintiff consistently scored at the top of

his class.  (Id. ¶ 11.)  Nevertheless, at the end of the Program, several younger, minority students were selected over Plaintiff to become paid classroom assistants.  (Id. ¶ 12.)

When Plaintiff asked Training Coordinator Defendant George Johnson why he was not selected, Johnson told Plaintiff, "You think you're special," "We want younger people," and "You had your chance."  (Id. ¶ 14.)  Thereafter, Plaintiff spoke with Assistant Training Coordinator, Defendant George Sambuca, who explained that businesses which hire from the apprenticeship program "are only looking for minorities."  (Id. ¶ 15.)  Sambuca went on to indicate that companies use the apprenticeship program to fill quotas and make their businesses look good.  (Id.)

Upon finishing the Program, Plaintiff enrolled in a similar course at the Philadelphia Technical Training ("PTT") School.  (Id. ¶ 16.)  Again, he was one of the top students.  (Id. ¶ 17.)  Lead Instructor Sherman McLeod told Plaintiff that he was an excellent student and that Plaintiff was being considered for a paid assistant position at Philadelphia Technical Training.  (Id. ¶ 18.)  Two weeks later, however, McLeod said he could no longer offer Plaintiff an assistant position because he had spoken with Defendant Johnson at the PHA's Pre-Apprenticeship Program, the program from which almost all of PTT's students came.  (Id. ¶ 19.)  McLeod indicated that he did not want to offend Johnson or the PHA by accepting PHA's rejected candidates.  (Id.)  As a result, Plaintiff claims that he became severely depressed and suffered injuries including: (1) pain and suffering, including emotional distress and embarrassment; (2) economic loss(es), including lost opportunity(ies); (3) attorneys fees and court costs; and/or (4) other and further injuries.  (Id. ¶¶ 20–21.)

Plaintiff initiated the present case on August 21, 2013, and, on November 18, 2013, filed

an Amended Complaint.  Plaintiff now sets forth five counts as follows: (1) intentional discrimination under Title VII; (2) a claim under 42 U.S.C. § 1983 against the PHA and the individual Defendants in their official capacities; (3) a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"); (4) a claim under the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"); and (5) a claim under 42 U.S.C. §§ 1983 and 1985 through U.S. Constitutional Amendment XIV.

Defendants PHA and Johnson filed the pending Motion to Dismiss on December 2, 2013, and Plaintiff responded on January 21, 2014.  On March 13, 2014, Defendant Sambuca filed his Motion to Dismiss that is virtually identical to that submitted by Defendants PHA and Johnson.  The Motion are now ripe for judicial review.

## II.  STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.  Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Thus, although "Rule 8 marks a notable and

generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

**III.    DISCUSSION**

In their Motion to Dismiss, Defendants seek dismissal of multiple counts within Plaintiff's Amended Complaint.  First, they contend that Counts I through V against Defendants Johnson and Sambuca must be dismissed for failure to state a claim upon which relief may be granted.  Second, Defendants seek dismissal of 42 U.S.C. § 1983 liability against the Philadelphia Housing Authority.  The Court addresses each argument separately.

    **A.    Counts I–V Against Individual Defendants Johnson and Sambuca**

        **1.    Claims for Individual Liability Under Title VII and the ADEA**

Defendants first argue that Counts I and III of Plaintiff's Amended Complaint, which allege individual liability against Johnson and Sambuca under Title VII and the ADEA, must be dismissed because these statutes do not provide for individual liability.  In his Response Brief, Plaintiff essentially concedes this point and expressly withdraws these claims.  (Pl.'s Resp. Opp'n Mot. Dismiss 6.)  Accordingly, the Court grants Defendants' Motion as to these Counts.

        **2.    Claims for Aiding and Abetting Liability Under the PHRA**

Defendants next seek to dismiss any claims of aiding and abetting against Defendants Johnson and Sambuca in their individual capacities.  Applying the Rule 12(b)(6) standard, the Court cannot dismiss these claims against Johnson or Sambuca.

The PHRA provides in pertinent part:

> It shall be an unlawful discriminatory practice . . . [f]or any person, employer, employment agency, labor organization or employee, to aid, abet, [or] incite . . . the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act . . ., or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

5

42 Pa. Stat. § 955(e) (1997).  While § 955(e) extends liability to any individual who aids and abets the alleged discrimination, "only supervisory employees, not co-workers, can be held liable under § 955(e)," based on the theory that only supervisory employees "can share the discriminatory purpose and intent of the employer that is required for aiding and abetting." <u>Carlton v. City of Phila.</u>, No. Civ.A. 03–1620, 2004 WL 633279, at *8 (E.D. Pa. Mar. 30, 2004). Stated conversely, "[n]on-supervisory employees cannot be liable for aiding and abetting their employer's discrimination through direct discriminatory acts because they do not share the intent and purpose of their employer."  <u>Santai v. Fred Beans Ford, Inc.</u>, No. Civ.A.10-2367, 2011 WL 3606836, at *3 (E.D. Pa. Aug. 16, 2011).  Thus, even though the PHRA is generally applied in accordance with Title VII, an individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision.  <u>Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C.</u>, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998).

In the present case, the allegations in the Amended Complaint regarding Defendants Johnson and Sambuca are somewhat sparse.  As to Defendant Johnson, Plaintiff alleges as follows:

> 6. Defendant, George Johnson, is an adult individual who, at all times material herein, acted individually, and/or as an agent, workman, officer, and/or employee of Philadelphia Housing Authority, as well as in his official capacity as Training Coordinator.  Upon information and belief, Defendant Johnson was the ultimate decision-maker regarding Plaintiff's (non-)hire.
> . . .
> 14. When Plaintiff asked Training Coordinator Johnson why Plaintiff was not selected, Johnson told Plaintiff, "You think you're special," "We want younger people," and "You had your chance" — implying that Plaintiff had plenty of

>    time to pursue career opportunities earlier in life.

(Am. Compl. ¶¶ 6 &14.)  As to Defendant Sambuca, Plaintiff avers:

>    7.   Defendant, George Sambuca, is an adult individual who, at all times material herein, acted individually, and/or as an agent, servant, workman, officer, and/or employee of Philadelphia Housing Authority, as well as in his official capacity as Assistant Training Coordinator.
>    . . .
>    15.  Plaintiff spoke with Assistant Training Coordinator, Defendant, George Sambuca, who explained that businesses which hire from the apprenticeship program "are only looking for minorities."  Sambuca then elaborated that companies use the apprenticeship program to fill quotas and to make their businesses look good.

(Am. Compl. ¶¶ 7 & 15.)  Notwithstanding the relatively bare-boned nature of these allegations, Plaintiff clearly asserts that both Johnson and Sambuca were the Training Coordinator and Assistant Training Coordinator, respectively, and that Johnson was the ultimate decision-maker regarding "Plaintiff's (non-)hire."  Such allegations clearly permit the reasonable inference that both Defendants were Plaintiff's "supervisors" in the Pre-Apprenticeship Training Program at the PHA.  Moreover, Plaintiff asserts that both Defendants aided and abetted in the alleged age discrimination through their individual discriminatory acts.  Defendant Johnson made the decision to not hire Plaintiff and made statements suggesting that age was a factor.  Similarly, Defendant Sambuca told Plaintiff that companies hired only minorities through the program.  At this stage of the litigation, such allegations are enough to state a plausible claim against both Defendants.

### 3.   Claims Against Johnson and Sambuca in Their Official Capacities

Count II of the Amended Complaint asserts claims against Defendants Johnson and Sambuca in their official capacities under 42 U.S.C. § 1983.  "[O]fficial-capacity suits generally

represent only another way of pleading an action against an entity of which an officer is an agent." Hafer v. Melo, 502 U.S. 21, 25 (1991) (quoting Kentucky v. Graham, 473 U.S. 159 (1985); Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978) (internal quotation marks omitted)). Suits against government officers in their official capacity therefore should be treated as suits against the government entity itself. Hafer, 502 U.S. at 25 (citing Graham, 473 U.S. at 166). Where the plaintiff sues both the governmental entity and the entity's officers in their official capacities, the official capacity suits are duplicative of the suit against the entity and should be dismissed. Strickland v. Mahoning Twp., 647 F. Supp. 2d 422, 428 (M.D. Pa. 2009); see also Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988) (holding that personal capacity damage suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law, whereas official capacity suits are duplicative of the claims against the municipality and generally represent only another way of pleading an action against an entity of which an officer is an agent) (quotations omitted); Irene B. v. Phila. Acad. Charter Sch., No. Civ.A.02–1716, 2003 WL 24052009, at *9 (E.D. Pa. Jan. 29, 2003) ("'Since official-capacity suits generally represent only another way of pleading an action against an entity of which the officer is an agent,' it is appropriate to dismiss the claims against the individual in his official capacity and retain them against the real party in interest.") (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 n.55 (1978))

      To the extent that the officials in this case are being sued in their official capacities, the Court will treat such actions as suits against the PHA itself. Plaintiff has already named the PHA as a Defendant in the same claims he brings against Johnson and Sambuca in their official capacities. As such, the suits against the individuals in their official capacities are duplicative of

those against the PHA. Accordingly, the Court will dismiss the official capacity suits.

### 4. Section 1985 Claims Against the Individual Defendants

Plaintiff also seeks relief under 42 U.S.C. § 1985(3) for a conspiracy among Defendants. Section 1985(3) "permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)). To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." Id. (quotation omitted). The Third Circuit has held that "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) (citing D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir. 1992)); see also Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008) (stating that a conspiracy requires a "meeting of the minds"). "This holding remains good law following Twombly and Iqbal, which, in the conspiracy context, require 'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" Great Western, 615 F.3d at 178 (quoting Twombly, 550 U.S. at 556).

In the present case, Plaintiff makes a singular allegation that "Defendants, Johnson and

Sambuca, in conspiracy with and/or by aiding and abetting Defendants, John Does, in the doing of unlawful discriminatory practices—specifically, not hiring Plaintiff, and others like Plaintiff, because of his race and age [sic]." (Am. Compl. ¶ 46.) Such a threadbare allegation of concerted action does not suggest *any* factual matter, let alone "sufficient" factual matter, to allow an inference that an agreement was made. Aside from not identifying any specifics about any of the John Doe Defendants, Plaintiff does not even assert that Defendants Johnson and Sambuca had any dealings with each other in an effort to coordinate discrimination against Plaintiff. Plaintiff's Response in Opposition to the Motion to Dismiss similarly makes no efforts to allege a conspiracy. Certainly, if the dictates of Twombly and Iqbal are to mean anything, such bare bones pleading cannot pass Rule 12(b)(6) muster.

### 5.   Section 1983 Claims Against Individual Defendants in Their Individual Capacities

An individual-capacity suit under 42 U.S.C. § 1983 "alleges wrongful conduct taken under color of state law and seeks relief from the defendant personally." Craig v. Salamone, No. Civ.A.98–3685, 1999 WL 213368, at *4 (E.D. Pa. Apr. 8, 1999). To incur individual liability, a defendant must be "personally involved in the alleged wrongs." Santiago v. City of Vineland, 107 F. Supp. 2d 512, 540 (D.N.J. 2000) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Such involvement may be shown by allegations of "personal direction or of actual knowledge and acquiescence" made with appropriate particularity. Rode, 845 F.2d at 1207. "[L]iability cannot be predicated solely on the operation of respondeat superior." Id.

As noted above, Plaintiff alleges that both Defendants Johnson and Sambuca personally participated in the discrimination against Plaintiff on the basis of both race and age. Moreover,

Plaintiff asserts that Defendant Johnson, as Training Coordinator at the PHA, was personally responsible for his non-hire.  For purposes of the present Motion, such allegations are sufficient to survive judicial scrutiny.

### B. Section 1983 Claim Against the Philadelphia Housing Authority

Finally, Plaintiff brings a § 1983 claim against the PHA itself.  The Supreme Court has held that municipalities and other local government units qualify as "persons" subject to liability under § 1983.  Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690 (1978).  A municipality, however, cannot incur § 1983 liability based on a respondeat superior theory.  Id. at 691.  Rather, § 1983 imposes liability only where a plaintiff identifies either "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Id. at 690–91.  The Third Circuit has refined these definitions, explaining that policy or custom may be established: (1) "[w]hen a decisionmaker possess [ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict," or (2) through a "course of conduct . . . when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations and quotations omitted).  These standards ensure that municipalities may incur liability only for deprivations resulting from the decisions of "those officials whose acts may fairly be said to be those of the municipality." Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403–04 (1997); Banegas v. Hampton, No. Civ.A.08-5348, 2009 WL 1098845, at *3 n.3 (E.D. Pa. Apr. 22, 2009).

With respect to the Monell claim in the present case, the Amended Complaint alleges as follows:

> 35. Prior to the events described herein, Defendants developed and maintained policies, practices, procedures and customs exhibiting deliberate indifference to the Constitutional rights of persons within the geographical and jurisdictional limits of the City of Philadelphia which caused violations of Plaintiff's constitutional and other rights.
>
> 36. Specifically, Defendants maintained a custom, policy, practice and/or procedure of discrimination as to age and race, pursuant to 42 U.S.C. § 1983, et seq., in violation of the Fourteenth Amendment's equal protection guarantee.
>
> 37. The above described acts or omissions by Defendants, demonstrated a deliberate indifference to the rights of citizens of the City of Philadelphia, such as Plaintiff, and were the cause of the violations of Plaintiff's rights as set forth herein.

(Am. Compl. ¶¶ 35–37.)  Such pleadings simply cannot pass muster under the Twombly/Iqbal standard of review.  These allegations are, again, nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678.  Moreover, the Amended Complaint sets forth no facts that raise the right to relief above the speculative level.  While Plaintiff's Response argues that he cannot provide more specifics without discovery, Federal Rule of Civil Procedure 12(b)(6) was designed precisely to prevent such fishing expeditions.  Therefore, the Court will dismisses the § 1983 claim against PHA.

### C. Leave to Amend

It is well-established that if a complaint is subject to Rule 12(b)(6) dismissal, a district court must ordinarily permit a curative amendment unless such an amendment would be inequitable or futile, or there has been some showing of bad faith, undue delay, or prejudice. Alston v. Parker, 363 F.3d 229, 235–36 (3d Cir. 2004).  This opportunity to amend must be

offered, even if the plaintiff does not specifically make such a request. Id.

Plaintiff, in this case, has requested an opportunity to amend in order to more sufficiently plead the deficient claims. Absent both an objection by Defendants and a showing of prejudice or futility, the Court shall permit the amendment.

## IV.   CONCLUSION

Undoubtedly, Plaintiff's Amended Complaint suffers from multiple deficiencies. Specifically, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted as to Defendants Johnson and Sambuca in their individual capacities under 42 U.S.C. § 1985, Title VII, and the ADEA, and as to Defendant PHA under 42 U.S.C. § 1983.  The Court also dismisses Plaintiff's claims against Defendants Johnson and Sambuca in their official capacities as duplicative of the claim against the PHA.  Nonetheless, the Court finds that Plaintiff's claims against Defendants Johnson and Sambuca in their individual capacities under both the PHRA and § 1983 survive Rule 12(b)(6) scrutiny.  With respect to the improperly-pled claims, Plaintiff shall have twenty days from the date of this Order to file a Second Amended Complaint correcting any deficiencies.  Should Plaintiff fail to amend within this time, or should he choose to stand on his current Amended Complaint, Defendants may seek dismissal with prejudice of the aforementioned problematic claims.

An appropriate Order follows.