**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


ROBERT JACKSON,                  :
                                 :        CIVIL ACTION
                Plaintiff,       :
                                 :
        v.                       :
                                 :        NO.  13-4872
PHILADELPHIA HOUSING             :
AUTHORITY, GEORGE JOHNSON,       :
GEORGE SAMBUCA, CITY OF          :
PHILADELPHIA, and JOHN DOES 1-10, :
                                 :
                Defendants.      :


## MEMORANDUM

BUCKWALTER, S.J.                                              May 28, 2015


        Currently pending before the Court is the Motion for Summary Judgment by Defendants

Philadelphia Housing Authority, George Johnson, and George Sambuca (collectively

"Defendants").  For the following reasons, the Motion is granted.

## I.        FACTUAL BACKGROUND

        Defendant Philadelphia Housing Authority ("PHA") is a public housing authority,

organized under the laws of the Commonwealth of Pennsylvania, with a mission of providing

quality housing for low and moderate income families in Philadelphia.  (Defendants' Statement

of Undisputed Facts ("DSUF") ¶ 1; Plaintiff's Response to Defendants' Statement of Undisputed

Facts ("PRSUF") ¶ 1.)[1]  In connection with PHA's mission, PHA established a program entitled

---

[1]  To the extent the parties agree on a particular fact, the Court references only the
Defendants' Statement of Undisputed Facts and Plaintiff's Response.  To the extent there is a
dispute of fact, the Court will cite the relevant exhibits.

"Working Together for Jobs," which was memorialized in a Memorandum of Agreement ("MOA"). (DSUF ¶ 2; PRSUF ¶ 2.) Under the MOA, PHA agreed to collaborate with a number of Unions to create a Pre-Apprenticeship Program (the "Program") to prepare PHA residents with the skills necessary to be eligible for selection for participating unions' apprenticeship programs. (DSUF ¶ 3; PRSUF ¶ 3.) This Program provided an introduction to skills including carpentry, plumbing, painting, and electrical work, and prepared participants to take the qualifying apprenticeship exams for each trade union. (DSUF ¶ 4; PRSUF ¶ 4.) Each cycle of the Pre-Apprenticeship Program was twenty-one weeks in duration. (DSUF ¶ 5; PRSUF ¶ 5.) PHA also agreed to provide funding for the Program under the terms of the MOA. (DSUF ¶ 6; PRSUF ¶ 6.) Accordingly, PHA paid Pre-Apprenticeship Program participants, or students, an hourly wage for their participation in the Program, and paid the cost for eligible students to take the examinations to qualify for each union's apprenticeship at the conclusion of the Program. (DSUF ¶ 7; PRSUF ¶ 7.)

To participate in the Program, applicants were required to complete a basic academic examination and undergo a background check and drug test. Prospective students were also required to complete an interview with Defendant George Johnson ("Johnson"), who served as the Training Coordinator at all times relevant to the instant matter. (DSUF ¶ 8; PRSUF ¶ 8.) Johnson also oversaw selection of the paid teaching assistants and conferred with the Pre-Apprenticeship Program instructors to identify the most qualified individuals for the positions and make selection decisions. (Defs.' Mot. Summ. J., Ex. C, Aff. of George Johnson ("Johnson Aff.") ¶ 18.) Defendant George Sambuca ("Sambuca") served as the Assistant Training Coordinator to Johnson at all times relevant to this matter. (DSUF ¶ 19; PRSUF ¶ 19.)

Prospective students, such as Plaintiff, completed an apprenticeship agreement, which included a signed acknowledgment stating that they were not guaranteed employment upon completion of the Program. (DSUF ¶ 9; PRSUF ¶ 9.) Prospective students also signed (1) an acceptance letter stating that acceptance into the Program was not a promise of employment with PHA upon completion of the training period, and (2) an at-will employee agreement. (DSUF ¶¶ 10–11; PRSUF ¶¶ 10–11.)

At the conclusion of the Program, students were encouraged to pursue employment with the participating unions' apprenticeship programs by taking qualifying examinations and completing each union's interview process, if invited to interview. (DSUF ¶ 12; PRSUF ¶ 12.) There was no guarantee that a student who completed PHA's Program would be selected for a union apprenticeship position. (DSUF ¶ 13; PRSUF ¶ 13.) In some instances, when a student was not chosen by a union, he or she could be "held over" at PHA for extended training wherein the individual served as a paid teaching assistant for approximately five months. (DSUF ¶ 14; PRSUF ¶ 14.) Johnson averred that students were selected for paid teaching assistant positions with PHA based on their overall performance during the Pre-Apprenticeship Program. (Johnson Aff. ¶ 17.) There was no guarantee that a student who completed PHA's Program would be selected for a paid teaching assistant position. (DSUF ¶ 16; PRSUF ¶ 16.) Alternatively, a student not chosen by a union for an apprenticeship program could, in some cases, be hired for an open position at PHA. (DSUF ¶¶ 17–18; PRSUF ¶¶ 17–18.)

Plaintiff Robert Jackson was sixty-three years old at all times relevant to this matter. (DSUF ¶ 20; PRSUF ¶ 20.) Although Plaintiff has considered himself retired since age sixty-one, he indicated that he would have considered going back to work if the right opportunity came

along.  (Defs.' Mot. Summ. J., Ex. G, Dep. of Robert Jackson ("Jackson Dep.") 169:23–170:13, Dec. 11, 2014.)  Plaintiff has been a PHA resident for approximately four years.  (DSUF ¶ 22; PRSUF ¶ 22.)  In December 2011, Plaintiff interviewed with Johnson for a spot in the Pre-Apprenticeship Program.  (DSUF ¶ 23; PRSUF ¶ 23.)  Thereafter, from January 2012 to June 7, 2012, Plaintiff participated in the twenty-seventh cycle of the Pre-Apprenticeship Program. (DSUF ¶¶ 24–25; PRSUF ¶¶ 24–25.)  Thirty-eight students started the Program during this cycle, and thirty-four students, including Plaintiff, completed and graduated from the Program.  (DSUF ¶ 26; PRSUF ¶ 26; Defs.' Mot. Summ. J., Ex. H.)  In addition to training at PHA, Plaintiff and his fellow participants also completed a five-day welding program at Philadelphia Technical Training School ("PTT"), an independent institution, during which time PHA continued paying students.  (DSUF ¶¶ 27–28; PRSUF ¶¶ 27–28.)  Plaintiff graduated from the Pre-Apprenticeship Program on June 8, 2012 and remains in good standing.  (DSUF ¶ 30; PRSUF ¶ 30.)

Prior to beginning the Program, Plaintiff signed and understood an acknowledgment affirming his awareness that there was no guarantee of employment upon completion of the Program, and that his success was directly related to his commitment to the Program.  (DSUF ¶ 31; PRSUF ¶ 31.)  At the time he completed the Program, Plaintiff took the apprenticeship qualifying examinations with the carpenters', electricians', and painters' unions.  (DSUF ¶ 32; PRSUF ¶ 32.)  According to Plaintiff, he received letters stating that he passed the electricians' and painters' union apprenticeship qualifying examinations, but was not informed as to whether he passed the carpenters' union examination.  (DSUF ¶¶ 33–34; PRSUF ¶¶ 33–34.)  Thereafter, he completed apprenticeship interviews with the electricians' and painters' unions.  (DSUF ¶ 35; PRSUF ¶ 35.)  Notwithstanding his allegedly superior performance in the Program, however,

Plaintiff was not chosen by any union to participate in its apprenticeship program at that time. (DSUF ¶ 36; PRSUF ¶ 36; Jackson Dep. 110:16–112:20.) Plaintiff was also scheduled to take the plumbers' union apprenticeship qualifying examination, but did not do so because he was "disgusted" and thought "it would just be a waste of time." (DSUF ¶ 37; PRSUF ¶ 37.) Plaintiff was placed on a waiting list for the painters' union, but he never followed up with them to see if they had work. (DSUF ¶ 38; PRSUF ¶ 38.) According to Plaintiff, he was told that businesses which hired from the apprenticeship program were only looking for minorities. (Jackson Dep. 92:6–9, Dec. 11, 2014.)[2]

Plaintiff was also not selected for a paid teaching assistant position at PHA. (DSUF ¶ 39; PRSUF ¶ 39.) At the completion of the twenty-seventh cycle of the Program, PHA was not hiring for positions other than paid classroom assistants and none of Plaintiff's co-students were hired other than as paid classroom assistants. (DSUF ¶¶ 40–42; PRSUF ¶¶ 40–42.) As Program Coordinator, Defendant Johnson was responsible for selecting the paid assistants. (DSUF ¶ 48; PRSUF ¶ 48.) According to Defendant Johnson, paid classroom assistants were selected based on a number of factors including test scores, instructor recommendations, classroom demeanor, work product, employment opportunities each student had prior to entering the Program, and overall performance in the Program. (Johnson Aff. ¶ 28.) According to Plaintiff, however, when he asked Johnson why he was not hired as a paid classroom assistant, Johnson told him that he "had [his] chance." (Jackson Dep. 157:5–24.) Plaintiff also avers that additional welding

---

[2] In multiple instances, Plaintiff cites to his First Amended Complaint as support for factual allegations. At the summary judgment stage, allegations of a complaint need not be taken as true and Plaintiff has the burden to come forward with substantive evidence to support his factual averments. Accordingly, to the extent Plaintiff relies only on his Amended Complaint, the Court does not credit his correlating factual averments.

training opportunities were available at PTT in which PHA would pay for further training, but he did not receive this information in writing. (DSUF ¶ 53; PRSUF ¶ 53.) Plaintiff contends that he was not selected for further training by PTT because the instructor, Sherman McLeod, did not want to offend Johnson or the PHA by accepting PHA's rejected candidates after Plaintiff filed an internal complaint against Johnson. (DSUF ¶ 55; PRSUF ¶ 55.)

Plaintiff alleged that he was not hired for a five-month paid teaching assistant position, or any other position at PHA, due to his age. (DSUF ¶ 58; PRSUF ¶ 58.) He also asserts that he was told that the best students from his cycle would be brought back as paid teaching assistants. (DSUF ¶ 59; PRSUF ¶ 59.) This statement, however, was never provided in writing. (DSUF ¶ 60; PRSUF ¶ 60.) Plaintiff admitted that he signed an agreement acknowledging that there was no guarantee for future employment upon completion of the Pre-Apprenticeship Program. (DSUF ¶ 61; PRSUF ¶ 61.) He also admitted that he was not privy to each student's test scores, but remarked that he was the first student to receive a score of 100 on a test—which was announced in class as a recognition of Plaintiff's accomplishment—and he consistently received 100s on every test he took. (DSUF ¶ 62; PRSUF ¶ 62; Jackson Dep. 111:9–112:14.) PHA never told Jackson that he was the top student in class. (DSUF ¶ 65; PRSUF ¶ 64.) Plaintiff testified that two men were hired by PHA in five-month positions as teaching assistants, both of whom were between twenty-two and twenty-five years of age. (DSUF ¶ 66; PRSUF ¶ 66.) Plaintiff was unaware of the test scores or class performance of these two men. (DSUF ¶ 67; PRSUF ¶ 67.)

Plaintiff met with Johnson in his office on June 7, 2012 and was told that he would not be selected as a paid assistant. (DSUF ¶ 68; PRSUF ¶ 68.) Thereafter, Plaintiff filed an internal

Equal Employment Opportunity Complaint ("EEOC") Form with PHA. (DSUF ¶ 69; PRSUF ¶ 69.) That complaint alleged that Johnson told Plaintiff that he was not chosen due to his age. (DSUF ¶ 70; PRSUF ¶ 70.) He further asserted that other, less qualified individuals were selected for paid assistant positions or employment by PHA, but does not recall those individuals' names. (DSUF ¶ 77; PRSUF ¶ 77.) Plaintiff specifically remembered that Johnson recommended Hollywood Henderson, an African American male, for a PHA carpenter apprenticeship job, and that he received an interview, but was not hired. (DSUF ¶ 78; PRSUF ¶ 78.) Plaintiff believed that he outperformed Henderson during the Program, even though he was not in all of Henderson's classes and did not know his grades. (DSUF ¶¶ 79–80; PRSUF ¶¶ 79–80.) Plaintiff also believed that PHA hired two women from the Pre-Apprenticeship Program, but did not know their names or ages. (DSUF ¶¶ 81–82; PRSUF ¶¶ 81–82.) He indicated that he thought that one of the two women was approximately twenty-six years of age and the other may have been over fifty or fifty-five years of age. (DSUF ¶ 83; PRSUF ¶ 83.) Plaintiff remarked that the twenty-six year-old woman was the first one to get 100% on a test in May. (DSUF ¶ 84; PRSUF ¶ 84.) PHA was not otherwise hiring and did not hire any students from the twenty-seventh cycle of the Program upon graduation other than the paid classroom assistants. (DSUF ¶ 85; PRSUF ¶ 85.)

Plaintiff initiated the current action against Defendants on August 21, 2013. Thereafter, on November 18, 2013, he filed the First Amended Complaint setting forth the following causes of action: (1) violation of Title VII, 42 U.S.C. § 2000e-3(A) against Defendants PHA, City of Philadelphia, and the individual Defendants in their individual capacities; (2) a Monell claim against PHA, City of Philadelphia, and the individual Defendants in their official capacities; (3)

violation of the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 621, et seq. against Defendants PHA, City of Philadelphia, and the individual Defendants in their official capacities; (4) violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq., against all Defendants; and (5) violation of 42 U.S.C. §§ 1983, 1985, et seq., through the Fourteenth Amendment, against all Defendants.  By way of Orders dated March 20, 2014 and June 11, 2014, the Court dismissed all claims except for the Title VII, the Age Discrimination in Employment Act, and the PHRA claims against PHA, and the § 1983 and PHRA claims against the individual Defendants in their individual capacities.

Defendants filed the current Motion for Summary Judgment on February 6, 2015. Plaintiff responded on April 20, 2015.  Thereafter, Defendants filed a Reply Brief on May 11, 2015, and Plaintiff filed a Sur-reply Brief on May 13, 2015.  The Motion is now ripe for judicial review.

## II.     STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the

disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson, 477 U.S. at 249–50.

## III. DISCUSSION

Defendants currently move for summary judgment on Plaintiff's claims of (1) race discrimination under Title VII, 42 U.S.C. § 1983, and the PHRA; and (2) age discrimination under the ADEA, 42 U.S.C. § 1983, and the PHRA. The Court addresses each claim separately.

## A.      Race Discrimination Under Title VII, Section 1983, and the PHRA[3]

Title VII of the Civil Rights Act of 1964 provides in relevant part that it is an "unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ." 42 U.S.C. § 2000e-2(a)(1).  To establish a claim of discrimination based on disparate treatment, a plaintiff must show that an employer had a racially discriminatory animus against an employee, and that the animus resulted in a challenged action, such as dismissal, failure to promote, or failure to hire.  Lewis v. Univ. of Pittsburgh, 725 F.2d 910, 914 (3d Cir. 1983).

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the United States Supreme Court set forth the precise framework for analyzing a claim based upon racial discrimination where, as here, there is no direct evidence of discrimination.  First, the plaintiff must prove by a preponderance of evidence a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  Next, if the plaintiff establishes a prima facie case of discrimination, a "presumption" of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate nondiscriminatory reason for the adverse employment action.  Id. at 802–03.  To sustain this burden, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons."  Texas Dept. of Cmty. Affairs v. Burdine 450 U.S. 248, 254 (1981).  The

---

[3] Because discrimination claims under Title VII, the PHRA, and § 1983 are all analyzed under the same legal standard, the Court interchangeably refers to cases considering claims under any of these sections.  Atkinson v. Lafayette College, 460 F.3d 447, 454 n.6 (3d Cir. 2006). Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999);  Showell v. Se. Pa. Transp. Auth., No. Civ.A.06-1574, 2008 WL 2389459, at *4 (E.D. Pa. Jun. 10, 2008).

inquiry concerning whether the defendant has met its burden of production "can involve no credibility assessment," since "the burden-of-production determination necessarily *precedes* the credibility-assessment stage." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993) (emphasis in original). The defendant satisfies its burden of production, and rebuts the plaintiff's prima facie showing of discrimination, simply by introducing admissible evidence that, if taken as true, would permit a finding that the challenged employment action was taken for legitimate, nondiscriminatory reasons. Id.

Finally, if the employer meets its burden of production, the presumption of discrimination created by plaintiff's prima facie case "drops out of the picture." Id. at 511 (citing McDonnell Douglas). In order to establish that the defendant is liable for illegal employment discrimination, the plaintiff must ultimately convince the trier of fact that a discriminatory animus was the real reason for the adverse employment action at issue. Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). "Liability cannot be established upon a jury's mere *disbelief* of the defendant's proffered reasons for an adverse employment action, but rather upon the jury's *affirmative belief* of the plaintiff's contention that the action was taken on the basis of an impermissible discriminatory criterion." Mitchell v. Miller, 884 F. Supp. 2d 334, 370–71 (W.D. Pa. 2012) (emphasis in original) (citing St. Mary's Honor Ctr., 509 U.S. at 519 ("It is not enough, in other words, to *disbelieve* the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.") (emphasis in original)). "Nevertheless, evidence suggesting that an employer's proffered reasons for an adverse employment action are false, when coupled with a plaintiff's prima facie case, may sufficiently undermine the employer's credibility to enable a reasonable trier of fact to conclude that illegal discrimination has occurred." Mitchell, 884 F. Supp. 2d at

11

371 (citing <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147–48 (2000)).

In the case at bar, Plaintiff has no direct evidence of race discrimination. As such, the Court must apply the <u>McDonnell Douglas</u> burden-shifting analysis. Under that analysis, Defendants contend that Plaintiff's race discrimination claim must fail on two grounds: (1) he has not established a prima facie case; and (2) Defendants' have set forth legitimate non-discriminatory reasons for his non-hire for which Plaintiff has not proven pretext. As the Court finds merit to Defendants' first argument, the Court's discussion focuses solely on that issue.

A plaintiff must first establish a prima facie case of race discrimination by showing that (1) he was a member of a protected class; (2) he was qualified for his position; (3) he had an adverse action taken against him; and (4) similarly situated individuals who were not members of the plaintiff's protected class were treated more favorably. <u>Kimble v. Morgan Props.</u>, 241 F. App'x 895, 897–98 (3d Cir. 2007). Because the prima facie inquiry in any case is fact-specific, "[t]he touchstone of the inquiry is whether the circumstances giving rise to an inference of discrimination are of *evidentiary value,* not whether they fit into a mechanical formula." <u>Cobetto v. Wyeth Pharms.</u>, 619 F. Supp. 2d 142, 153 n.3 (W.D. Pa. 2007) (emphasis in original).

In the present case, it is undisputed that Plaintiff, as a Caucasian, is a member of a protected class and that he suffered an adverse employment action in the form of non-hire. Defendants now argue that Plaintiff has failed to establish the fourth prong of the prima facie case. To satisfy the fourth prong, a plaintiff must establish "that similarly situated individuals outside the plaintiff's class were treated more favorably [than he]." <u>Anderson v. Wachovia Mortg. Corp.</u>, 621 F.3d 261, 273–74 (3d Cir. 2010). Alternatively, the plaintiff must prove that he was not hired "under circumstances that give rise to an inference of unlawful discrimination

such as might occur when the position is filled by a person not of the protected class." Jones v. Sch. Dist. of Phila. 198 F.3d 403, 410–11 (3d Cir. 1999) (quotation omitted). "The 'central focus' of the prima facie case 'is always whether the employer is treating some people less favorably than others because of their race. . . .'" Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (quoting Pivirotto v. Innovative Sys., 191 F.3d 344, 352 (3d Cir. 1999) (further quotations omitted)). "An inference of race-based discrimination cannot arise simply from an employee's subjective belief that his or her race somehow influenced the challenged employment action." Howard v. Blalock Elec. Serv., Inc., 742 F. Supp. 2d 681, 702 (W.D. Pa. 2010); see also Tillman v. Redevelopment Auth., No. Civ.A.12-1505, 2013 WL 5594701, at *8 (E.D. Pa. Oct. 11, 2013) ("A plaintiff's own unsubstantiated, subjective beliefs of suspicions alone would not suffice to persuade a rational trier of fact that age [or race] was a factor in the termination decision."), aff'd, 598 F. App'x 83 (3d Cir. 2015). Importantly, "[b]ecause a motion for summary judgment is designed to go beyond the pleadings, a plaintiff may not successfully oppose a summary judgment by merely resting on the allegations contained in his complaint." Heffron v. Adamar of NJ, Inc., 270 F. Supp. 2d 562, 576 (D.N.J. 2003) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)).

In the present case, Plaintiff offers little to no evidence that race played any motivating role in his non-hire. Specifically, he argues that:

> Here, Plaintiff is Caucasian and was not hired for a teaching position with PHA. Defendants hired several African American students as teaching assistants instead of Plaintiff.
>
> Additionally, Defendant, George Johnson made recommendations to prospective employers outside of the PHA about which program participants should be interviewed and hired. The non-PHA employers' decisions not to hire Plaintiff were

based on Johnson's recommendations.

Defendants have not offered <u>any</u> legitimate, nondiscriminatory reason for not hiring Plaintiff, nor for not recommending Plaintiff to outside employment. Defendants only aver that (1) Plaintiff was not guaranteed employment with PHA upon completion of the Pre-Apprenticeship Program; and (2) paid classroom assistant selections were based on a totally [sic] of circumstances.

The affidavit of George Johnson identifies several factors considered regarding employment: test scores, instructor recommendations, classroom demeanor, work product, employment opportunities each student had prior to entering the program, and overall performance. Defendants, however, do not explain how any of those factors made Plaintiff a bad candidate for PHA or outside employers. Defendants give no specific reason whatsoever as to why they did not hire Plaintiff – as is their burden. <u>Id.</u>

Defendants additionally do not argue that the candidates that were hired were more qualified than Plaintiff. For example, Defendants provided no evidence that the candidates that were hired had better scores on weekly tests.

Therefore, Defendants failed to meet their burden of articulating any legitimate, non-discriminatory reason for not hiring or recommending Plaintiff.

On the contrary, there is strong evidence that Defendants [sic] generalized criteria were not the real factors which Defendants considered in their hiring decisions regarding Plaintiff.

The evidence demonstrates that Plaintiff's performance during the Pre-Apprenticeship Program was excellent and better than other Pre-Apprenticeship students. Specifically, Plaintiff consistently scored at the top of the class based on weekly tests. Plaintiff was also the first student to receive a score of 100 on a test – which was announced in class.

Plaintiff also passed several other union tests and Plaintiff received praise from PTT Lead Instructor, Sherman McCleod in a related training program. Plaintiff's excellent performance should have made Plaintiff a strong candidate under Defendants' claimed hiring criteria.

Finally, Defendant, George Sambuca admitted to Plaintiff that Defendants only recommended candidates who were minorities.

Defendants' ambiguous and generalized reasons for its adverse employment decisions are a pretext.

14

(Pl.'s Resp. Opp'n Summ. J. 7–8.)

This argument, however, is replete with error and misunderstandings about the legal framework in which Plaintiff's case must be adjudged. As a primary matter, Plaintiff repeatedly refers to Defendants' burden to demonstrate that the other candidates' test scores were superior to his, to explain why the various enumerated factors identified by Defendant Johnson made Plaintiff a bad candidate for employment, or to articulate another legitimate, non-discriminatory reason for not hiring Plaintiff or recommending him for hire. In doing so, however, Plaintiff completely skips over the initial part of the McDonnell Douglas analysis, which requires Plaintiff, as part of his prima facie case, to demonstrate "circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class." Jones, 198 F.3d at 410–11 (quotation omitted). Under this standard, until Plaintiff provides evidence giving rise to such an inference, Defendants have no burden to set forth a legitimate, non-discriminatory reason.

Moreover, any evidence Plaintiff offers in support of his inference of racial discrimination is simply insufficient to substantiate Plaintiff's prima facie case. Rather, he argues solely—and with no evidentiary support—that he was a Caucasian man that allegedly did well in the Pre-Apprenticeship Program, but was nonetheless passed over for hire by Defendants, in favor of several African American students, and not recommended for hire to outside employers. This argument fails to create a genuine issue of fact sufficient to survive summary judgment review for several reasons. First, with respect to Plaintiff's allegation that African American students were hired instead of him, Plaintiff fails to establish that such students were "similarly situated." To be "similarly situated" for the purposes of a workplace discrimination or

15

retaliation case, "comparator employees 'must be similarly situated in all relevant respects.'"

Philpot v. Amtrak, No. Civ.A.10-1276, 2011 WL 5339030, at *5 (E.D. Pa. Nov. 3, 2011) (citing

Wilcher v. Postmaster Gen., 441 F. App'x 879, 882 (3d Cir. 2011)) (further citations omitted).

Notwithstanding this mandate, Plaintiff failed to produce any evidence regarding these students'

test scores, classroom demeanor, work product, employment opportunities they had prior to

entering the Program, or overall performance. Absent such evidence, the Court cannot find that

these students were so similarly situated to Plaintiff that their being hired over Plaintiff gives rise

to an inference of discrimination.

Second, Plaintiff has not produced any evidence that he was the most qualified student in

his round of the Program. Although he repeatedly asserts that he was the first one in his class to

obtain a score of 100 on an exam, he provides no other evidence about his overall performance in

comparison to other students. Indeed, Plaintiff admitted that PHA never told him he was number

one in his class, but rather he inferred his standing from his own observations. (Jackson Dep.

83:7–84:19.) He also conceded that he does not know specifically whether anyone else ever got

100 on a test, but only knew that PHA never announced any 100 test scores after his first one.

(Id. at 111:9–114:11.) Finally, he never had a final exam or received a report card. (Id. at

92:19–93:4.)

Third, to the extent Plaintiff asserts that he believed race was a factor in his non-hire,

Plaintiff disregards the principle, set forth above, that "[a]n inference of race-based

discrimination cannot arise simply from an employee's subjective belief that his or her race

somehow influenced the challenged employment action." Howard, 742 F. Supp. 2d at 702. His

only somewhat direct evidence is an alleged remark by Defendant Sambuca that "the people who

are calling are calling for minorities, not for white persons." (Jackson Dep. 92:6–9.) That remark, however, pertains to hiring decisions by third parties, not by Defendants. Plaintiff admitted that "[t]o [his] knowledge," the unions' hiring decision were all independent decisions not controlled by PHA. (Id. at 106:17–23.) He otherwise admitted to having no tangible evidence, other than his own opinion, that PHA had any involvement with the various unions' hiring decisions. (Id. at 100:4–101:7.) He subsequently clarified that Sambuca never said anything about Defendants wanting to hire only non-whites. (Id. at 162:10–20.) Indeed, when directly asked whether he believed that the African American students obtained positions based on their race, Plaintiff admitted that, "I could only say there's a possibility of that, which isn't saying a lot. The possibility is there," and he "would have to infer that." (Jackson Dep. 119:12–123.) When pressed further, he went on to concede that he really felt discrimination because of his age, but had no real evidence of race discrimination. (Id. at 118:9–18, 120:11–122:8.)

In sum, Plaintiff has simply not put forth any evidence, beyond mere speculation, that he was terminated due to some racial animus on the part of Defendants. While the prima facie case is typically not an onerous burden, it is also not a meaningless standard that can be satisfied by unfounded suspicions of discrimination. Accordingly, the Court dismisses Plaintiff's discrimination claim on this ground.

### B.    Age Discrimination Under the ADA, 42 U.S.C. § 1983, and the PHRA

The ADEA does not allow "age discrimination by employers against employees and applicants for employment." Levine v. Farleigh Dickinson Univ., 646 F.2d 825, 826 (3d Cir. 1981). In Duffy v. Paper Magic Grp., Inc., 265 F.3d 163 (3d Cir. 2001), the Third Circuit stated

the following elements to establish a prima facie ADEA age discrimination claim:

> The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, term[s], conditions or privileges of employment on the basis of their age. . . . Age discrimination may be established by direct or indirect evidence. . . . When evaluating ADEA discrimination claims based on indirect evidence, a plaintiff may establish a prima facie case of age discrimination under the ADEA by demonstrating that she: (1) was a member of a protected class, i.e., that she was over forty, (2) is qualified for the position, (3) suffered an adverse employment decision, (4) and was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination.

Id. at 167 (citations omitted).[4]  If the plaintiff can establish his/her prima facie case, the burden then shifts—under the McDonnell Douglas test—to the defendant to set forth a legitimate, non-discriminatory reason, which then may be rebutted by plaintiff through a showing of pretext.

In the present case, Defendants first allege that Plaintiff has not satisfied his prima facie case because he has not satisfied the fourth element of the prima facie case and has relied on nothing but his own personal inferences and beliefs that he was not hired due to his age.  The Court, however, finds that Plaintiff has produced—albeit barely—sufficient evidence to create at least an inference of age discrimination that can survive summary judgment review.  As a primary matter, according to Plaintiff, PHA hired two men for five-month teaching assistant positions, both of whom were between twenty-two and twenty-five years of age.  (Jackson Dep. 159:20–160:20.)  In addition, PHA hired two women from the Program for full-time positions, one of whom Plaintiff believed was approximately twenty-six, another who was over fifty.  (Id.

---

[4]  In the Third Circuit, ADEA and PHRA claims are litigated according to the burden-shifting framework developed in McDonnell Douglas for Title VII claims.  Cridland v. Kmart Corp., 929 F. Supp. 2d 377, 384 (E.D. Pa. 2013).  The Third Circuit has suggested, however, that the ADEA precludes claims for age discrimination under 42 U.S.C. § 1983.  Accordingly, that claim must be dismissed.  Rodrock v. Moury, 379 F. App'x 164, 165–66 (3d Cir. 2010).

at 155:11–157:4.)  Finally, Plaintiff testified that PHA recommended a man named Hollywood Henderson for an apprenticeship with the carpenters' union, and he was fifty-six years old.  (<u>Id.</u> at 154:3-156:10.)   "[T]o satisfy the sufficiently younger standard, 'there is no particular age different that must be shown, but . . . courts have held . . . that a five year difference can be sufficient [while] . . . . a one year difference cannot.'"  <u>Monaco v. Am. Gen. Assurance Co.</u>, 359 F.3d 296, 307 (3d Cir. 2004) (citing <u>Showalter v. Univ. of Pittsburgh Med. Ctr.</u>, 190 F.3d 231, 236 (3d Cir. 1999)).  Given that Plaintiff was sixty-three at the time of the relevant events in this case, the aforementioned individuals could conceivably satisfy the "sufficiently younger" standard.

Moreover, Plaintiff offered an additional piece of circumstantial evidence.  At his deposition, Plaintiff testified that when he asked Defendant Johnson why he was not selected for employment by PHA, Johnson told him that he "had [his] chance."  (Jackson Dep. 125:4–10.) Plaintiff took this to mean that Johnson was referring to his age.  While such evidence is weak, at best, "[p]laintiff's 'evidentiary burden at [the prima facie] stage is rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent—i.e., that discrimination could be a reason for the employer's action." <u>Gude v. Rockford Ctr. Inc.</u>, 699 F. Supp. 2d 671, 679 (D. Del. 2010) (quoting <u>Marzano v. Computer Sci. Corp. Inc.</u>, 91 F.3d 497, 508 (3d Cir. 1996)), <u>aff'd</u>, 393 F. App'x 838 (3d Cir. 2010).  "The burden of establishing a prima facie case is not meant to be onerous, as that step in the <u>McDonnell Douglas</u> framework merely provides "a sensible, orderly way to evaluate the evidence" to determine whether it is adequate to create an inference of discrimination.  <u>Furnco Constr. Corp. v. Waters</u>, 438 U.S. 567, 577 (1978).  Thus, under this standard, Johnson's ambiguous remark, together

with the hiring of some younger individuals, creates at least an inference of age discrimination.

The inquiry, however, does not end at this juncture. As noted above, once a plaintiff sets forth a prima facie case of discrimination, the burden shifts to the employer to set forth a legitimate non-discriminatory reason for the challenged adverse employment actions. All the employer needs to do at this juncture is introduce admissible evidence that, if taken as true, would "*permit* a finding that the challenged employment action was taken for legitimate, nondiscriminatory reasons." Mitchell, 884 F. Supp. 2d at 370 (emphasis in original).

Defendants, in this case, have done so. According to Defendant Johnson's Affidavit, only a limited number of students could be selected for a paid teaching assistant position with PHA and there was no guarantee that a student who completed the Pre-Apprenticeship Program would be selected for such a position. (Defs.' Mot. Summ. J., Ex. C, Aff. of George Johnson ("Johnson Aff.") ¶¶ 15–16.) Students were selected for a paid teaching assistant position based on their overall performance during the Pre-Apprenticeship Program and, at the end of the twenty-seventh cycle, hired assistants were chosen based on factors including test scores, instructor recommendations, classroom demeanor, work product, prior employment opportunities, and overall performance in the Pre-Apprenticeship Program. (Id. ¶¶ 17, 19.) PHA did not hire any students from that cycle upon graduation other than the paid classroom assistants. (Id. ¶ 24.) According to Defendant Johnson, Plaintiff was not selected simply because other students were selected as stronger candidates for the position. (Id. ¶ 20.)

The burden now shifts to Plaintiff to demonstrate that these reasons are nothing more than pretext. As noted above, in order to establish that the defendant is liable for illegal employment discrimination, the plaintiff must ultimately convince the trier of fact that a discriminatory

animus was the real reason for the adverse employment action at issue.  <u>Fuentes</u>, 32 F.3d at 765.

"Liability cannot be established upon a jury's mere *disbelief* of the defendant's proffered reasons

for an adverse employment action, but rather upon the jury's *affirmative belief* of the plaintiff's

contention that the action was taken on the basis of an impermissible discriminatory criterion."

<u>Mitchell</u>, 884 F. Supp. 2d at 370 (emphasis in original)).  It is incumbent upon Plaintiff to point

to evidence which demonstrates "such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that

a reasonable factfinder could rationally find them unworthy of credence."  <u>Fuentes</u>, 32 F.3d at

765.

     Plaintiff's unsupported arguments and scant evidentiary production fail to meet this

burden.  First, Plaintiff asserts that Defendants provide no evidence that the candidates hired

were more qualified or had better weekly test scores than Plaintiff.  Notably, however, the onus

rests with Plaintiff to establish that he, in fact, was more qualified and should have been hired

under Defendants' generalized criteria.  Yet, the only evidence Plaintiff can offer about his

performance is that he was the first student in his five-month Program cycle to score a 100 on a

test and that he continued to perform well on weekly tests.  (Jackson Dep. ¶ 111:9–19.)  He

provided no information—other than his own generalized assessment that he was a top

performer—about his classroom demeanor, his work product, his prior employment

opportunities, or his overall performance.  He admitted that he did not know how other students

scored on tests or whether their qualifications met any of the other criteria that PHA considered

in making hiring decisions.  (<u>Id.</u> at 112:2–115:9.)  Indeed, Plaintiff could not even identify the

names of these other students, let alone indicate why he was a more qualified candidate.

Ultimately, Plaintiff knew that many students participated in the Program and that there was no guarantee of employment upon completion, as set forth in the agreement he signed at the outset of the Program.

Second, to the extent Plaintiff relies on his conversation with Defendant Johnson to establish pretext, his argument must fail. When questioned about this conversation, he admitted to speculation on his part:

> Q.    Let's go to paragraph 14 [of the Complaint]. Let's take a look at that. Fourteen reads, when plaintiff asked training coordinator Johnson why plaintiff was not selected, Johnson told plaintiff, you think you're special. We want younger people and you had your chance, implying that plaintiff had plenty of time to pursue career opportunities earlier in life. Is that accurate—
>
> A.    That's exactly right.
>
> Q.    Where did that conversation happen?
>
> A.    Mr. Johnson's office.
>
> Q.    When did that conversation happen?
>
> A.    The first week of June after the phone call that I was informed that I was not selected.
>
> Q.    How long after the phone call did you meet?
>
> A.    Well, I think I met him the following Tuesday or Wednesday because I was in the school Friday when I made the phone call.
>
> Q.    Any other witnesses who were there who would be able to testify—
>
> A.    No, not on the phone, no.
>
> Q.    I'm not talking about the phone–
>
> A.    No, just Johnson and I.
>
> Q.    So, you were alone with Johnson in his office and—
>
> A.    But his door was wide open but, you know.
>
> Q.    What is your basis for inferring that—where it says in your complaint, you had your chance and that refers to you [sic] age, why are you implying that?
>
> A.    I'm giving him the benefit of—well, I had my chance—let's see. Let me make this clear. The reason why I was not selected, according to him, is because I had my chance. I'm inferring that. I'm inferring that that's what he was referring to.
>
> Q.    Meaning your age?
>
> A.    Right, exactly.
>
> Q.    That's your inference?
>
> A.    That's my inference.
>
> . . .

Q. What did you say to him when he said that to you?

A. That's a good question. Well, of course I contested it. I contested it verbally. I said, wait a minute. It's a known fact any score they bring back, the better students—and I said I was number one in the class. There's no dispute about that and various things like that. And I contended with him about that, saying that I should have been selected. Then he kept emphasizing that I was not being selected because I had had my chance. And how did they put it here. We want younger people. He probably said that, probably said that.

Q. Do you know for a fact he said it or—

A. This is taken earlier. I was closer to the incident here than now.

Q. As you sit here today, do you have a recollection that Mr. Johnson said that he probably wanted younger people?

A. No, I don't have that recollection.

(Jackson Dep. 122:23–125:17.)[5] Stated simply, the sole evidence in support of Plaintiff's age discrimination claim is Johnson's statement to Plaintiff that "you had your chance," together with Plaintiff's speculative inference that Johnson was referring to age, as opposed to chance in the Program or chance to impress the instructors. Such an inference, with absolutely no supporting evidence, is insufficient to create a genuine issue of material fact regarding whether Defendants' articulated, non-discriminatory reasons for not hiring Plaintiff were pretext.

In short, Plaintiff has failed to point to evidence which demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 765. While Plaintiff may have been qualified for a position with PHA, only a few positions were open to a graduating class of thirty-four students. Ultimately, PHA chose to hire other students—including a woman in her fifties—based on various criteria, only one of which was test scores. When Plaintiff questioned this hiring

_____

[5] Plaintiff's Opposition Brief attempts to rely on allegations from his Complaint. As noted above, such allegations are not evidence and, thus, are not properly considered on review of a motion for summary judgment.

decision, the sole potentially offensive response was that he had his chance, which could be given a wide variety of interpretations other than that Plaintiff was too old. Nothing presented by Plaintiff would allow a jury to affirmatively believe Plaintiff's contention that he was not hired solely on the basis of his age.  Faced with the relatively undisputed record in this case, the Court finds that no genuine issue of material fact as to pretext exists that would preclude dismissal of this claim.

## IV.    CONCLUSION

The current case presents a situation in which Plaintiff—an older Caucasian man who believes himself to have performed superiorly in a training Program—claims that his failure to be hired for limited employment positions could only be the result of some form of discrimination, rather than as a result of broad-based employment decisions.  In lodging such allegations, however, Plaintiff has failed to produce a modicum of cognizable evidence upon which any reasonable jury could conclude that the hiring decisions were incorrect, that those hired were less qualified than him, or that Defendants were otherwise motivated by some discriminatory animus. Plaintiff's mere dissatisfaction with the hiring decision, accompanied by speculative inferences that the decisions were unlawfully founded, is simply insufficient to survive Rule 56 review and proceed to trial.  Accordingly, the Court grants Defendants' Motion for Summary Judgment and dismisses this case in its entirety.